**FLASTER/GREENBERG P.C.**
By:  Jeffrey A. Cohen, Esquire
     Rachel E. Licausi, Esquire
Commerce Center
1810 Chapel Avenue West
Cherry Hill, NJ 08002
(856) 661-1900 - Phone
(856) 661-1919 - Facsimile
jeffrey.cohen@flastergreenberg.com
rachel.licausi@flastergreenberg.com
*Attorneys for Plaintiff, Goldin Auctions, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GOLDIN AUCTIONS, LLC,<br><br>               Plaintiff,<br><br>v.<br><br>KOBE BRYANT,<br><br>               Defendant. | CIVIL ACTION NO. |

## VERIFIED COMPLAINT FOR EXPEDITED DECLARATORY JUDGMENT

Plaintiff Goldin Auctions, LLC ("Goldin Auctions"), by its undersigned attorneys Flaster/Greenberg P.C., files this Verified Complaint against Defendant Kobe Bryant ("Defendant"), and states as follows:

### PRELIMINARY STATEMENT

1.      Goldin Auctions seeks the immediate assistance of this Court to stop Defendant from interfering with its scheduled June 2013 auction of the sports memorabilia of Kobe Bryant which was consigned to it by Kobe Bryant's mother, Pamela Bryant.

2.      Goldin Auctions is entitled to injunctive relief to end Defendant's interference with its auction and a declaratory judgment that it has the legal right to sell at auction approximately 70-100 items consigned to it by Defendant's mother, Pamela Bryant.

## PARTIES

3.    Plaintiff Goldin Auctions, LLC ("Goldin Auctions") is a Nevada limited liability company with its principle place of business located at 423 Commerce Lane, Suite #4, West Berlin, County of Camden, New Jersey.  Goldin Auctions' managing member is Kenneth Goldin ("Goldin").  The New Jersey office is the location from which Goldin Auctions conducts a majority of its business.

4.    Defendant Kobe Bryant is a resident of California with an address of 1 Pinnacle Point, Newport Coast, California.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 as the matter in controversy exceeds the sum or value of $75,000 and the action is between citizens of different states.

6.    Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to this action occurred in this District where the sports memorabilia was stored both prior and subsequent to the transfer to Goldin Actions, and the locale where the items are presently maintained.

7.    Venue is also appropriate pursuant to 28 U.S.C. § 1391(c)(2) because Goldin Auctions is an entity maintaining its principle place of business in this judicial district.

## FACTS COMMON TO ALL COUNTS

8.    On December 27, 2012, Defendant Kobe Bryant's mother, Pamela Bryant, initiated contact to Ken Goldin, President and Managing Member of Goldin Auctions, proposing to offer to Goldin Auctions for sale items from her son's childhood, high school basketball career and entry into the National Basketball Association.

9.      The items include by way of example, Kobe Bryant's road maroon Lower Merion High School (LMHS) basket ball uniform (shorts and jersey) from his freshmen year, two complete #33 LMHS uniforms (shorts and jersey) worn during his high school career, six rings including:  Kobe Bryant's 1996 High School McDonald's All-American ring, 1996 High School State Championship ring, 1998 and 2000 NBA All-Star rings, a team issued Kobe Bryant 2000 Lakers championship ring, '93-'94, '94-'95 and '95-'96 LMHS MVP plaques, 1996 Gatorade High School Player of the Year plaque, several LMHS practice jerseys, sweatsuit tops, warm-up jerseys, multiple LMHS Varsity Letters awarded for basketball, a LMHS Central League Champions jacket, and an Italian Rieti #44 jersey.

10.     Defendant Kobe Bryant's mother, Pamela Bryant, represented to Kenneth Goldin of Goldin Auctions that most of the sports memorabilia had been stored in her possession for over fifteen years.  Pamela Bryant represented that five years ago, she put the items in a storage unit in New Jersey after Kobe Bryant indicated to Pamela Bryant that the items belonged to her and that he had no interest in them.

11.     On January 2, 2013, Pamela Bryant signed a Consignment Agreement with Goldin Auctions agreeing to the following terms:

> 1.      This agreement confirms that <u>Pamela Bryant</u> (hereinafter the "consignor") has agreed to consign the memorabilia or collectibles ("items") listed below, and on subsequent pages, to Goldin Auctions, Inc. ("consignee") to be offered for public sale at auction.
>
> 2.      Consignor agrees to deliver, or ship, the consigned items to the consignee.
>
> 3.      Consignor agrees that consignee will be solely responsible for determining final lotting and for describing of all items. Consignee will determine the appropriate auction date to offer the consigned items.
>
> 4.      Consignor agrees to provide as much information as possible regarding consigned items including provenance, COA's

and any specific details which may be included in the description of those items.

5.      Consignor guarantees to be the sole owner of all consigned items and warrants that they have full and clear title to said items.

6.      A commission rate of 20% will be charged to the consignor.  The commission will be deducted from the final bid price (not including the buyers premium).

7.      In the event that the consignee does not receive payment for any lots within forty-five (45) days after the close of the auction, the consignee reserves the right to sell the lot to the next underbidder as if such underbidder had been the highest bidder. Consignee also reserves the right to offer the item in a future sale or to return it to the consignor.

8.      Proceeds from the sale will be mailed to the consignor within fourteen (14) days after the payment has been received from the buyer, pending the resolution of any claims arising from concerns over authenticity, condition, or ownership.

9.      Consignor is responsible for fees related to the authentication and/or grading of material if the consignee believes that said authentication and/or grading is necessary to sell any items.  Authentication fees will be deducted from the consignor proceeds.  Authentication fees for PSA/DNA items will be at 30% off advertised PSA/DNA price.

10.     [CROSSED OFF BY PARTIES]

11.     Consignors may not directly or indirectly bid on items that they own.

12.     **An Advance of $450,000 via wire transfer on 1/3/13** (The 'Advance') shall be paid to consignor.  This advance shall go towards all monies that would be payable to consignor under the consignment agreement upon sale of items.  Consignor agrees to supply enough product to earn out The Advance.

13.     Consignor agrees to sign and provide a notarized letter of authenticity (LOA) for each item provided by Jan 31, 2013. Consignee will provide the letters to be signed.

14.     Consignor expressly states that each item is original, one of a kind, authentic, and not a replica or facsimile (unless stated otherwise in Schedule A).

15.     Consignee has the option of auctioning any item or conducting a private sale of an item, whichever it feels shall bring in the highest revenue for that item.

16.     Consignor agrees to continually provide merchandise from Kobe Bryant (or other agreed players) to ensure the Advance of $450,000 is fully earned out per the agreement.  If within 12 months of date of agreement the Advance has not been fully earned out, Consignee has the option of requesting the unearned amount be paid back, or grant a 1 year extension to provide merchandise to earn out the Advance.  Until The Advance is fully earned, consignor agrees not to sell or auction any memorabilia other than that provided to consignee.

…

Exhibit A.

12.     Pamela Bryant signed Letters of Authenticity certifying that she is the mother of Kobe Bryant and that the following items are free of any liens and encumbrances:

a.     1996 Gatorade National Player of the Year Award;

b.     2000 All Star Game Signed Ball;

c.     Keystone Games Medal and Ribbon;

d.     2000 NBA Championship Ring (JB);

e.     2000 NBA Championship Ring (PB);

f.     1996 High School State Champions Ring;

g.     1996-97 Lower Merion High School Varsity MVP Plaque;

h.     1995 Adidas ABCD Camp- Outstanding Senior Trophy ;

i.     1993-94 Lower Merion High School Varsity Basketball MVP Plaque;

j.     Lower Merion High School #33 Central League Champs Jacket;

k.     Lower Merion High School Uniform (#33);

l.     Lower Merion High School purple sweatsuit top;

m.     Lower Merion High School shorts (white);

n.     Lower Merion High School shorts (maroon);

o.     Lakers Jacket;

p.      Lower Merion High School warm up top;

q.      Lakers Shorts;

r.      Lower Merion High School purple sweatsuit top;

s.      Lower Merion High School Jersey;

t.      Lower Merion High School shorts;

u.      Lower Merion High School Jersey (#14);

v.      1998 All Star ring;

w.      1994-95 Lower Merion High School Varsity MVP Plaque;

x.      1992 Sonny Hill League Future Stars Champion Trophy;

y.      1995 Mark Freed Award with piece of net;

z.      Gym Rats Midnight Madness West MVP Trophy 9/23/95;

aa.      Herb Good Basketball Club 'National High School Player of the year 4/25/96;

bb.      1996 McDonalds High School All American Ring;

cc.      1996 Annual Magics Roundball Classic All Star Medallion and Ribbon;

dd.      Varsity Letter (BC);

ee.      Varsity Letter (LM);

ff.      Varsity Letter (LM);

gg.      Varsity Letter (LM);

hh.      Varsity Letter (LM);

ii.      Lower Merion High School Practice Jersey (#55);

jj.      Lower Merion High School Practice Jersey (#24);

kk.      Lower Merion High School Practice Jersey (#31);

ll.      Lower Merion High School sweatpants (#24);

mm.      Lower Merion High School Sweat Jacket and pants;

nn.      Lower Merion High School Uniform (#33);

oo.      Lower Merion High School Jersey (#24);

pp.   Italian Rieti #44 Jersey.

There are also additional items for which Pamela Bryant has not yet signed Letters of Authenticity.

13.   On January 3, 2013, the sports memorabilia was delivered to Goldin Auctions.

14.   On January 3, 2013, in accordance with paragraph 12 of the Consignment Agreement, Kenneth Goldin wired $450,000 to the Wells Fargo bank account of Joseph and Pamela Bryant, Kobe Bryant's parents.  Exhibit B.  Per the Consignment Agreement, the advance is to go toward all monies payable to Pamela Bryant under the Consignment Agreement upon sale of the items.

15.   Pamela Bryant indicated that the money received from the Advance was going to be immediately used to purchase a new home.

16.   On April 30, 2013, Goldin Auctions issued a press release titled "Goldin Auctions Presents: The Kobe Bryant Collection" ("Press Release").  The Press Release indicated that the June 2013 action would feature over 100 unique items from Kobe Bryant's childhood, high school career and entry into the NBA including championship rings, game worn high school uniforms and much more.  Exhibit C.  The Press Release indicates that the items have been consigned to auction by the Bryant family and will come with a signed letter of authenticity from Pamela Bryant.

17.   Immediately following the April 30, 2013 Press Release, the national media began running the story of Kobe Bryant's mother auctioning off sports memorabilia related to Kobe Bryant with Goldin Auctions.

18.   On April 30, 2013, counsel for Kobe Bryant, Loeb & Loeb, sent a cease and desist letter to Goldin Auctions representing that the auction items are the property of Kobe Bryant and that no one in the Bryant family has any right to the items.  The letter demands (1)

the immediate return of Kobe Bryant's personal property, (2) ceasing any and all references to Kobe Bryant being involved in the consignment auction, and (3) assurances by May 1, 2013 that Goldin Auctions will immediately discontinue the June 2013 auction.

19.     Upon receipt of this letter, Kenneth Goldin contacted Pamela Bryant who is currently in Thailand for two months. Pamela Bryant assured Kenneth Goldin that she is the legal owner of the items to be auctioned and therefore, the auction should continue as planned and that she has used the $450,000 advance to purchase a house in Nevada. Pamela Bryant also indicated that her son gave these items to her stating "here mom, these are for you". When Kobe Bryant would come to Philadelphia to visit his mother, she would ask him if he wanted any of the sports memorabilia to which he replied "no." After Kobe Bryant got married, Pamela Bryant asked his wife (approximately 7-8 years ago) if she or Kobe wanted any of the sports memorabilia, to which Kobe's wife replied that the items were from Kobe's past and they did not want them. After that discussion, Kobe and his wife never discussed the items with Pamela again. Pamela packed up the items, and paid to store and insure them in West Berlin New Jersey at a cost of $1,500 per month. Pamela Bryant indicated to Ken Goldin that Kobe Bryant has never demanded the return of any of the items, nor were they in any way improperly taken from Kobe Bryant without his permission. See Certification of Pamela Bryant at ¶4 -14.

## COUNT I – TEMPORARY & PRELIMINARY INJUNCTIVE RELIEF

20.     Plaintiff hereby incorporates by reference all other paragraphs of its Complaint as if set forth fully herein.

21.     The January 2, 2013 Consignment Agreement states at paragraph 5 "Consignor guarantees to be the sole owner of all consigned items and warrants that they have full and clear title to said items".

22.     In direct contradiction of the Consignment Agreement and Pamela Bryant's representations thereunder, Kobe Bryant is representing that he is the legal owner of the sports memorabilia and that Goldin Auctions does not have a right to sell the memorabilia.

23.     If Kobe Bryant's position is perpetuated and accepted and the action is canceled, Plaintiff will suffer irreparable harm as it has already advanced $450,000 to Pamela Bryant and because the sports memorabilia are one of a kind unique items that cannot be replaced and Plaintiff will lose all profits it rightfully expected from the auction.

24.     If Kobe Bryant's position is perpetuated and accepted and the auction is canceled, there are in excess of 900 items worth approximately $1,500,000 in other collectables set for auction not consigned by Pamela Bryant that will be in jeopardy of not being sold.

25.     Plaintiff will also suffer irreparable harm if it cannot continue to advertise the June 2013 auction. Any delay in advertising efforts will decrease the profits at the auction and cause uncertainly in the public marketplace because Plaintiff has issued a press release about the auction.

## COUNT II – DECLARATORY JUDGMENT

26.     Plaintiff hereby incorporates by reference all other paragraphs of its Complaint as if set forth fully herein.

27.     Plaintiff seeks a declaratory judgment that Goldin Auctions has legal ownership of the sports memorabilia pursuant to the Consignment Agreement entered into with Pamela Bryant on January 2, 2013 and that the June 2013 auction may continue as scheduled.

## PRAYER FOR RELIEF

Wherefore, Plaintiff demands judgment against Defendant in the form of the Court granting:

A.      A declaratory judgment that Goldin Auctions has legal ownership of the sports memorabilia pursuant to the Consignment Agreement entered into with Pamela Bryant on January 2, 2013;

B.      For temporary restraints restraining Defendant from interfering with the June 2013 auction;

C.      Preliminary and permanent injunctive relief enjoining Defendant from interfering with the June 2013 auction;

D.      Expedited discovery to allow for a determination of this matter in advance of the June, 2013 auction;

E.      Reasonable attorneys' fees and costs; and

F.      Such other, further, and different relief as the Court deems just and proper.


**FLASTER/GREENBERG P.C.**
Jeffrey A. Cohen, Esquire
Rachel E. Licausi, Esquire
Attorneys for Plaintiff Goldin Auctions, LLC


By: _____

Dated:  May 2, 2013                                    Jeffrey A. Cohen, Esquire

3138769

## <u>VERIFICATION</u>

I, Kenneth Goldin, am the managing member and President of Goldin

Auctions, LLC, the plaintiff herein, have read the foregoing Verified Complaint.

Based upon my personal knowledge, I hereby certify that the statements set forth

in this Verified Complaint are true and accurate.

KENNETH GOLDIN

Dated: May 1, 2013

# EXHIBIT A

Name *Pamela Bryant*
Address *1835 N 72 St*
EMail *pcoxb@yahoo.com*
Phone *610 453-0728 or 610 707 1349*

# goldin auctions

423 Commerce Lane • Suite #4 • West Berlin, NJ 08091 • 856.767.8550

## CONSIGNMENT AGREEMENT

1. This agreement confirms that *Pamela Bryant* (hereinafter the "consignor") has agreed to consign the memorabilia or collectibles ("items") listed below, and on subsequent pages, to Goldin Auctions, Inc. ("consignee") to be offered for public sale at auction.

2. Consignor agrees to deliver, or ship, the consigned items to the consignee.

3. Consignor agrees that consignee will be solely responsible for determining final lotting and for describing of all items.  Consignee will determine the appropriate auction date to offer the consigned items.

4. Consignor agrees to provide as much information as possible regarding consigned items including provenance, COA's and any specific details which may be included in the description of those items.

5. Consignor guarantees to be the sole owner of all consigned items and warrants that they have full and clear title to said items.

6. A commission rate of *20%* will be charged to the consignor.  The commission will be deducted from the final bid price (not including the buyers premium).

7. In the event that the consignee does not receive payment for any lots within forty-five (45) days after the close of the auction, the consignee reserves the right to sell the lot to the next underbidder as if such underbidder had been the highest bidder.  Consignee also reserves the right to offer the item in a future sale or to return it to the consignor.

8. Proceeds from the sale will be mailed to the consignor within fourteen (14) days after the payment has been received from the buyer, pending the resolution of any claims arising from concerns over authenticity, condition, or ownership.

9. Consignor is responsible for fees related to the authentication and/or grading of material if the consignee believes that said authentication and/or grading is necessary to sell any items. Authentication fees will be deducted from the consignor proceeds. Authentication fees for PSA/DNA items will be at 30% off advertised PSA/DNA price.

10. ~~In the event that consignor wishes to withdraw an item, consignee must be notified in writing prior to the auction catalog going to print. Consignor will be charged for any authentication and/or grading of consigned items being withdrawn. If the catalog has already gone to print, consignor cannot withdraw an item without agreement of consignee, and if agreed a fee of $150 will be paid to consignee.~~

11. Consignors may not directly or indirectly bid on items that they own.

Consignor Signature: *Pamela Bryant*          Date: *1/2/2013*

Consignee Signature: *[signature]*          Date: *1/2/2013*

Addendum to Goldin Auctions/Pam Bryant Consignment Agreement

12. An Advance of $450,000 via wire transfer on 1/3/13 (The 'Advance') shall be paid to consignor. This advance shall go towards all monies that would be payable to consignor under the consignment agreement upon sale of items. Consignor agrees to supply enough product to earn out The Advance.

13. Consignor agrees to sign and provide a notarized letter of authenticity (LOA) for each item provided by Jan 31,2013. Consignee will provide the letters to be signed.

14. Consignor expressly states that each item is original, one of a kind, authentic, and not a replica or facsimile (unless stated otherwise in Schedule A).

15. Consignee has the option of auctioning any item or conducting a private sale of an item, whichever it feels shall bring in the highest revenue for that item.

16. Consignor agrees to continually provide merchandise from Kobe Bryant (or other agreed players) to ensure the Advance of $450,000 is fully earned out per the agreement. If within 12 months of date of agreement the Advance has not been fully earned out, Consignee has the option of requesting the unearned amount be paid back , or grant a 1 year extension to provide merchandise to earn out the Advance. Until The Advance is fully earned, consignor agrees not to sell or auction any memorabilia other than that provided to consignee.

17.   a. The Parties hereby submit to the non-exclusive jurisdiction of the United States District Court for the District of New Jersey (as well as all appropriate appellate courts) or, if jurisdiction in such court is lacking, the courts of the State of New Jersey sitting in Camden County (as well as all appropriate appellate courts) in connection with the enforcement of an Arbitral Decision.

      b. Any dispute arising out of or relating to this Agreement, interpretation of this Agreement , the breach or termination thereof(the "Dispute") shall be settled finally by an arbitral proceeding conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "AAA") then in effect.An arbitration proceeding shall be conducted before a single arbitrator in Philadelphia, Pa and the decision of the arbitrator ("Arbitral Decision") shall be subject to enforcement as provided above.

Consignor Signature: _Pamela Bryant_____   Date: _1/3/20 13_

Consignee Signature: _____   Date: _1/3/2013_

# EXHIBIT B

 **Bank**

# Domestic Wire Transfer

| | |
|---|---|
| Initiator: Deborah Fel | Date: 01/03/2013 |
| Initiator's Ph #*: (856) 428-8545 | Reference Number: 0208 |
| Approver's Name*: Jill Adrica | Wire Status: Pending Branch Approval |

| Wire Amount* | Customer's Bank Code* | Branch Bank Code* | Branch #* |
|---|---|---|---|
| $450,000.00 | 004-TD BANK N.A. | 004-TD BANK N.A. | 04 |

**Same Day Deposit?**
No

| Wire Type* | Account Type |
|---|---|
| Wire Transfer | Personal |

## ORIGINATOR

| Customer Name* | Customer Account Number* |
|---|---|
| Ken Goldin | |

## BENEFICIARY

| Beneficiary Name* | Beneficiary Account Number* |
|---|---|
| Joseph And Pamela Bryant | |
| Beneficiary Address 1* | Beneficiary Address 2* |
| 1835 North 72nd Street | |
| Beneficiary City* | Beneficiary State / Zip Code* |
| Philadelphia | PA 19151 |

## RECEIVING BANK

| Receiving Bank Name* | ABA Number* |
|---|---|
| Wells Fargo Bank N.A. | |

## SPECIAL INSTRUCTIONS

| Further Credit Bank Name | Further Credit Bank Number |
|---|---|

**Further Credit Comments (Max 140 Characters)**

| CUSTOMER REQUESTING | APPROVED BY |
|---|---|
| (Signature) | (Signature) |
| Ken Goldin | |

# EXHIBIT C





FOR IMMEDIATE RELEASE

Media Contact:
Doug Drotman
631-462-1198
doug@drotmanpr.com
@GoldinAuctions

## Goldin Auctions Presents: The Bryant Collection

*June auction features 100+ unique items from Kobe Bryant's childhood, high school career and entry into the NBA including championship rings, game worn high school uniforms and much more*

WEST BERLIN, NJ - APRIL 30, 2013 - In its June 2013 auction, Goldin Auctions is offering collectors the rare opportunity to bid upon more than 100 items of unique memorabilia from the early basketball life of Kobe Bryant consigned by his mother Pamela Bryant. **The Bryant Collection: presented by Goldin Auctions** features a wide array of trophies, championship rings, medals, plaques, game worn uniforms and more from his childhood in Italy, his high school years in Pennsylvania and his early years in the NBA.



For more information, or to register for a free catalog, visit www.GoldinAuctions.com.

The centerpiece of **The Bryant Collection: presented by Goldin Auctions** is a road maroon Lower Merion High School (LMHS) #24 basketball uniform (shorts and jersey) from Bryant's freshmen year. This uniform is special in that he only wore #24, as a freshman, before switching to #33 for the remainder of his high school career. It is believed to be the only authentic game worn #24 Kobe Bryant LMHS jersey in existence. The next time he wore a #24 jersey was when he switched his NBA number to it after the 2005-06 NBA season. When he finally removes #24 from his back, it will hang in the rafters alongside, Wilt, Kareem, Magic and Shaq.

In addition to offering one fortunate collector the chance to own this rare #24 uniform, **The Bryant Collection** also includes two complete #33 LMHS uniforms (shorts and jersey) worn by Bryant during his high school career. One uniform is in the home white and the other is the road maroon.

The six rings in the collection include: a 1996 High School McDonald's All-American ring;

1996 High School State Championship ring; 1998 and 2000 NBA All-Star rings; plus a team issued Kobe Bryant 2000 Lakers championship ring given by Kobe to his father Joe Bryant and a specially designed version for his mother Pamela Bryant.

"A team issued championship ring is among the most treasured of all sports collectibles and the opportunity to own one from an active player as historically significant as Kobe Bryant is rare," said Ken Goldin, Founder of Goldin Auctions. "It's also an remarkable opportunity for collectors to own two prominent amateur rings including a McDonald's All-American ring and a High School championship ring. Normally items like these can only be viewed in a museum or the Hall of Fame. We are honored to be able to make these offerings to collectors around the world."

Some of the other items commemorating the legendary high school career of Kobe Bryant in the **Bryant Collection: presented by Goldin Auctions** are: the '93-'94, '94-95 and '95-96 LMHS MVP plaques; 1996 Gatorade High School Player of the Year plaque; several LMHS practice jerseys, sweatsuit tops, warm-up jerseys; multiple LMHS Varsity Letters awarded for basketball; and the actual LMHS Central League Champions jacket. From his time as a youngster in Italy, collectors will be able to bid upon the earliest known Kobe Bryant game worn jersey ever offered at auction - an Italian Rieti #44 jersey. Additional items will be announced closer the start of the auction in June.

All items are accompanied by a Letter of Authenticity signed by Kobe's mother Pamela Bryant. The LOA's state that the items are all authentic and have been in her possession until being consigned to auction. Goldin Auctions will also be issuing a LOA with each item guaranteeing its authenticity as well as its origin.








## About Goldin Auctions

Sports memorabilia impresario Ken Goldin has sold more than $600 million in memorabilia from many of the biggest names in sports, history and pop culture and was the pioneer of using the medium of television to sell sports memorabilia. Earlier this year, Goldin Auctions sold a Honus Wagner T206 card for a public sale record $2.1 million. Goldin Auctions strives to break new ground and offer collectors the best in collectible treasures up for auction in the marketplace. All game worn or autographed items come with team, player, league or additional LOA from industry leading authenticators; and collectors can bid with confidence that their proxy/ceiling bids remain confidential. For more information, visit www.goldinauctions.com.

# # #

**Forward this email**

SafeUnsubscribe



Trusted Email from
Constant Contact
Try it FREE today.

This email was sent to ken@goldinauctions.com by doug@drotmanpr.com |
Update Profile/Email Address | Instant removal with SafeUnsubscribe™ | Privacy Policy.

Drotman Communications of NY Inc | 368 Veterans Memorial Hwy | #8 | Commack | NY | 11725

Having trouble viewing this email? <u>Click here</u>

 



The Bryant Collection;  To clarify our previously issued press release, all items in this collection were consigned by Pamela Bryant.

**Contact Information**
Goldin Auctions
856-767-8550
<u>www.goldinauctions.com</u>

**Forward this email**

 

This email was sent to <u>doug@drotmanpr.com</u> by <u>doug@drotmanpr.com</u> |
<u>Update Profile/Email Address</u> | Instant removal with <u>SafeUnsubscribe</u>™ | <u>Privacy Policy</u>.
Drotman Communications of NY Inc | 368 Veterans Memorial Hwy | #8 | Commack | NY | 11725